IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TYLER FITZGERALD TATE #485797, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:22-cv-00162 ) ) JUDGE RICHARDSON |
| TENNESSEE DEPARTMENT OF CORRECTIONS, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff Tyler Fitzgerald Tate, an inmate at Riverbend Maximum Security Institution in Nashville, Tennessee, filed pro se a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), an amended application to proceed as a pauper (Doc. No. 7), and a motion to appoint counsel. (Doc. No. 3.) This case is before the Court for initial review. As explained below, this case will be referred to the Magistrate Judge for further development.

**I.   Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff's amended application to proceed as a pauper is accompanied by a certified trust account statement reflecting that he cannot pay the full filing fee in advance. (Doc. No. 7.) Accordingly, this application (Doc. No. 7) will be granted, the original application (Doc. No. 2) will be denied as moot, and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b).

**II.   Initial Review**

The Court must determine whether the Complaint is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c). The Court also must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Factual Allegations

This action concerns Plaintiff's conditions of confinement at Riverbend Maximum Security Institution (RMSI). The following summary of Plaintiff's factual allegations is drawn from the Complaint and the attached exhibits. The Court accepts these factual allegations as true.

In 2021, inmate Antonio Dorsey started a job as a kitchen worker in Plaintiff's housing unit. (Doc. No. 1 at 3.) On Dorsey's first day, Unit Manager Dennis Davis provided Dorsey false information about Plaintiff: that Plaintiff was a confidential informant working for the federal government and prison administration. (*Id.*) Later that day, Inmate Dorsey passed this false information to Plaintiff and four other inmates, including KeAnthony Jones and Q. Watkins. (*Id.*)

Between 10:00 and 10:40 a.m. on the morning of February 9, 2022, four inmates—including Dorsey, Jones, Watkins, and an individual with the last name Williams—forced their way into Plaintiff's cell with "prison made shanks/butcher kni[v]es." (*Id.*; Doc. No. 1-1 at 2.) The four inmates "sexually assaulted/raped [Plaintiff] with a cold drink/soda bottle," beat Plaintiff with their hands and feet, and took Plaintiff's personal property worth more than $1000. (Doc. No. 1 at 3; Doc. No. 1-1 at 2.) These four inmates took this action based on the false information given to Inmate Dorsey by Unit Manager Davis. (Doc. No. 1 at 3.)

When this incident occurred, Sergeant Bryan Mella was in charge of Plaintiff's housing unit. (*Id.* at 4.) Mella knew that the unit was short on staff, but he still "ran day room recreation" that morning. (*Id.*) The lack of staff allowed two of the four attackers to participate in the incident;

that is, Inmate Dorsey came from the upper tier of Plaintiff's housing pod, and Inmate Williams came from another housing pod. (*Id.*)

Twenty to thirty minutes after the incident, Plaintiff told Officer Rivera about his injuries and requested medical attention. (*Id.*) Rivera failed to get Plaintiff any help. (*Id.*) During Officer Stewart's 11:15 a.m. count, Stewart secured Plaintiff life-saving medical care. (Doc. No. 1-1 at 3.)

Plaintiff brings this action against Unit Manager Davis, Sergeant Mella, Officer Rivera, and Tennessee Department of Correction (TDOC) Commissioner Tony Parker, as well as TDOC itself. (Doc. No. 1 at 2.) Plaintiff alleges that Commissioner Parker is liable because Parker should have known that Plaintiff was in danger from Inmate Watkins based on a previous lawsuit Plaintiff filed in this Court in 2014, namely *Raybon-Tate v. Chapman*, No. 1:14-cv-00100. (*Id.* at 5.) Watkins is the biological brother of another inmate named Steven Crawley, and in the 2014 case, the Court held a hearing during which Plaintiff testified that Crawley assaulted him at South Central Correctional Facility (SCCF). (*Id.*); *Raybon-Tate*, No. 1:14-cv-00100, Doc. No. 20 at 6, 10–11, 28 (M.D. Tenn. Nov. 4, 2014). The Court sent a copy of that hearing transcript to Commissioner Parker. *Raybon-Tate*, No. 1:14-cv-00100, Doc. No. 17 (M.D. Tenn. Nov. 3, 2014). Plaintiff also alleges that Parker is liable because Parker is responsible for the training and hiring of TDOC staff. (Doc. No. 1 at 5.)

Plaintiff requests monetary damages and injunctive relief, including to be deemed incompatible with the four inmates who assaulted him, the prosecution of those four inmates under state law, a decrease in status from close custody to medium security so that Plaintiff can reside in a safer housing unit, lifting Plaintiff's visitation suspension, immediate release, and a Court Order that TDOC staff cannot retaliate against Plaintiff. (*Id.* at 3, 6–8.)

### B. Standard of Review

To determine whether a prisoner's complaint states a claim for the purpose of initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

#### 1. Dismissal of TDOC as a Party

The TDOC will be dismissed as a party because it "is not a 'person' within the meaning of [Section] 1983, and is therefore not a proper defendant." *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (citations omitted).

#### 2. Failure to Protect

The Eighth Amendment[1] imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)

---

[1] The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, such as Plaintiff here. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("The Eighth Amendment provides an inmate the right to be

(quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This claim has objective and subjective components. *Id.* The objective component requires Plaintiff to allege that "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 833). The subjective component requires Plaintiff to allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id.* (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 766–67 (quoting *Farmer*, 511 U.S. at 837).

Plaintiff satisfies the objective component by alleging that his housing unit was unsecured and that inmates assaulted him. Of the four individual Defendants, however, Plaintiff satisfies the subjective component only as to Unit Manager Davis. Plaintiff alleges that Davis told Inmate Dorsey (falsely) that Plaintiff was a confidential informant. Drawing all reasonable inferences in Plaintiff's favor, Davis knew that this information put Plaintiff at substantial risk of violence at the hands of other prisoners, and Davis disregarded that risk by failing to take any steps to protect Plaintiff. Plaintiff therefore states a failure-to-protect claim against Unit Manager Davis.

Plaintiff alleges that Sergeant Mella was in charge of the housing unit on the day of the incident, and that Mella is liable for the assault because Mella allowed "day room recreation" to occur despite insufficient staff to supervise the inmates. Even drawing all reasonable inferences in Plaintiff's favor, that is not sufficient to allege that Mella was aware of and consciously disregarded

---

free from cruel and unusual punishment."). In the case of state actors like Defendants, Eighth Amendment protections are applicable (when they are applicable) specifically by way of the Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts generally speak in terms of "Eighth Amendment" protection without any reference (beyond an initial reference) to the Fourteenth Amendment. Eighth Amendment protection is applicable in the instant case.

By contrast, the Due Process Clause of the Fourteenth Amendment provides the same kind (though not always identical) protection to pretrial detainees. *Richmond*, 885 F.3d at 937 ("The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees."). Such protection is generally referred to by courts as "Fourteenth Amendment" protection without any reference (beyond an initial reference) to the Due Process Clause. Fourteenth Amendment protection is inapplicable here.

a substantial risk to Plaintiff. Sergeant Mella's alleged position of authority, on its own, does not allow the Court to infer that Mella had "the personal involvement necessary to permit a finding of subjective knowledge." *Bishop*, 636 F.3d at 768 (citations omitted); *see id.* at 767 ("[A] prison official who was [actually] unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it.") (citing *Farmer*, 511 U.S. at 841–42).

As to Commissioner Parker, the Court cannot reasonably infer that Parker was aware of Plaintiff's substantial risk of harm at RMSI in February 2022 based on service of a transcript in a separate case regarding SCCF in November 2014. To impose "individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have 'encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)). Plaintiff does not allege any encouragement or direct participation by Commissioner Parker.

Finally, Officer Rivera does not enter the picture until after the alleged assault. The Court thus has no basis to conclude that Rivera "was aware of facts from which he . . . could infer a substantial risk of serious harm" prior to the incident. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018). Accordingly, Plaintiff fails to state a failure-to-protect claim against Sergeant Mella, Commissioner Parker, and Officer Rivera.

### 3. Inadequate Medical Care

The Eighth Amendment "is violated when prison doctors or officials are deliberately indifferent to [a] prisoner's serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The objective

component of this claim "requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock*, 273 F.3d at 703).

Accepting Plaintiff's allegations as true, Plaintiff satisfies the objective component of this claim. He does so by alleging that four inmates "sexually assaulted/raped [him] with a cold drink/soda bottle" and beat him with their hands and feet—attacks that, one might easily infer, would leave Plaintiff with serious medical needs. Plaintiff also satisfies the subjective component against Officer Rivera, but not the other individual Defendants. Plaintiff alleges that Rivera refused his request for medical attention twenty to thirty minutes after the assault. "When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004)). Accordingly, Plaintiff states a claim for deliberate indifference to serious medical needs against Officer Rivera.

Not so as to Commissioner Parker, Sergeant Mella, or Unit Manager Davis. "[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually." *Winkler*, 893 F.3d at 891 (quoting *Phillips*, 534 F.3d at 542). Here, Plaintiff does not allege that Parker, Mella, or Davis had any knowledge of Plaintiff's medical condition following the assault, or that these three Defendants encouraged or participated in Officer Rivera's

alleged denial of medical care. Plaintiff therefore fails to state a claim for constitutionally inadequate medical care against Parker, Mella, and Davis.

### 4. Requests for Injunctive Relief

Plaintiff requests six items of injunctive relief: being named incompatible with the four inmates who assaulted him; the prosecution of those four inmates under state law; a decrease in security status from close custody to medium security so that Plaintiff can reside in a safer housing unit; lifting Plaintiff's visitation suspension; immediate release, and a Court Order for TDOC staff to not retaliate against Plaintiff. Two of these requests will be dismissed.

First, Plaintiff's request for immediate release is not viable in this Section 1983 case. "Where the relief sought is 'a determination that he is entitled to immediate release or a speedier release from that imprisonment,' the prisoner must pursue relief through a writ of habeas corpus, not through [Section] 1983." *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). And second, this Court cannot order the state of Tennessee to prosecute the four inmates who allegedly assaulted Plaintiff. *See Martin v. Koljonen*, 89 F. App'x 567, 568 (6th Cir. 2004) ("Private citizens, whether or not they are prisoners, simply cannot compel a criminal investigation or prosecution against another." (collecting cases)).

Plaintiff's four remaining requests for injunctive relief—being named incompatible with the four inmates who assaulted him, a change in custody status to protect his well-being, lifting a visitation restriction, and an anti-retaliation order—will not be dismissed at this time. That is not to say that Plaintiff necessarily will ultimately receive this injunctive relief; even if he ultimately does establish a constitutional violation, such relief potentially could be denied him. Commissioner Parker will nonetheless remain as a Defendant in his official capacity only, so that a state official with authority to provide the requested relief is a party to this case in the event that Plaintiff

demonstrates an entitlement to it. *See Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("*Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations.") (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)).

To the extent that Plaintiff seeks monetary damages from Commissioner Parker or any other Defendant in their official capacities, however, that claim will be dismissed. As TDOC Commissioner and staff members at a TDOC-operated prison, Defendants represent the TDOC when they are sued in their official capacities. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). And the TDOC is an "agenc[y] of the state of Tennessee" that is "entitled to Eleventh Amendment immunity from suit for damages." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted).

### III. Motion to Appoint Counsel

"The appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (citing *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993)). "To determine whether these exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Id.* (citations omitted). Plaintiff has shown an ability to present his claims, and the motion to appoint counsel relies on alleged circumstances that are common to many prisoners rather than exceptional. (*See* Doc. No. 3 (making conclusory allegations of legal ignorance, case complexity, and indigence).) Accordingly, this motion will be denied without prejudice to renewal if Plaintiff can demonstrate exceptional circumstances in the future.

However, the Court notes Plaintiff's troubling statements in the cover letter accompanying the Complaint and a subsequent letter. There, Plaintiff states that he is in imminent danger and fears for his life. (*See* Doc. No. 1-2 at 2–5 (stating that Plaintiff fears for his life because, since the assault on February 9, 2022, Plaintiff has tried to kill himself and witnessed an inmate in his housing unit be stabbed and killed by another inmate); Doc. No. 8 at 1 (stating that Plaintiff's "life and safety is in immediate danger," and that TDOC "is doing nothing to protect" him).) These statements do not provide a basis for the Court to order immediate relief because, if nothing else, Plaintiff's belief that he faces imminent danger is not supported by specific allegations that Defendants are responsible for *present* conditions of confinement that pose an ongoing risk of serious harm.

A party may request preliminary injunctive relief in a case "to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint." Colvin v. Caruso, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)). In deciding whether to grant a preliminary injunction, the Court considers: (1) whether the moving party has a strong likelihood of success on the merits; (2) the threat of irreparable injury to the moving party; (3) potential harm the injunction would cause to third parties; and (4) the public interest. *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citing *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). Preliminary injunctive relief, however, is "an extraordinary and drastic remedy." *Id.* (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).

If Plaintiff chooses to file a motion for a preliminary injunction in the future, he should provide factual allegations that describe, in as much detail as possible, how Plaintiff is currently facing ongoing danger to his life and safety.

## IV.    Conclusion

For these reasons, the Court will grant Plaintiff pauper status and deny his motion to appoint counsel. The Court concludes that Plaintiff states an individual-capacity claim against Defendant Davis for failing to protect him from violence at the hands of other prisoners, and against Defendant Rivera for deliberate indifference to serious medical needs. These claims, along with Plaintiff's four remaining requests for injunctive relief (an incompatible listing, a change in custody status, lifting a visitation restriction, and an anti-retaliation order) from Commissioner Parker in his official capacity, will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. All other claims and Defendants will be dismissed.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE